**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BEVERLY A. HAISLEY | ) |
| | ) |
| Plaintiff, | ) |
| | )  Civil Action No. 08-1463 |
| v. | ) |
| | ) |
| SEDGWICK CLAIMS MANAGEMENT | ) |
| SERVICES, INC., PNC FINANCIAL | ) |
| SERVICES GROUP, INC., and the PNC | ) |
| FINANCIAL SERVICES GROUP, INC. | ) |
| LONG TERM DISABILITY PLAN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

**I.      Introduction**

On March 2, 2011, the court issued a Memorandum Opinion (ECF No. 112) granting in part the motion for summary judgment filed by plaintiff Beverly A. Haisley ("plaintiff" or "Haisley").  The court entered judgment against defendants Sedgwick Claims Management Services, Inc. ("Sedgwick"), PNC Financial Services Group, Inc. ("PNC"), and the PNC Financial Services Group, Inc., Long Term Disability Plan (the "Plan," together with Sedgwick and PNC, "defendants") with respect to plaintiff's claims alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Pending before the court is plaintiff's motion for attorneys' fees, costs, and interest ("Motion") (ECF No. 115). Plaintiff requests the court, pursuant to ERISA, to award her attorneys' fees in the amount of

$171,250.00, costs in the amount of $3,381.63, and interest in the amount of $6,228.29, plus an additional $4,360.00 in attorneys' fees for time spent replying to defendants' opposition to plaintiff's motion for attorneys' fees.  (Pl.'s Reply (ECF No. 121) at 9.)  After considering the Motion, the briefs, and the exhibits submitted by the parties, the court will grant the Motion in part and deny it in part.  For the reasons that follow, the court will award plaintiff attorneys' fees, costs and interest in the aggregate amount of $128,159.92.  This award reflects the exclusion of the hours the court concludes were not reasonably expended, or were clerical in nature, and one-hundred percent of the interest and reasonable costs.

## II.    Procedural History

On October 16, 2008, Haisley filed a complaint seeking two remedies: 1) an order requiring defendants to pay long term disability ("LTD") benefits owed to her under the terms of the Plan commencing on October 3, 2007, and ending October 2, 2009; and 2) a declaration clarifying her entitlement to future benefits under the Plan.  On January 16, 2009, defendants filed a motion to dismiss the complaint, which the court denied without prejudice on June 23, 2009.  On July 1, 2009, the court ordered the case be referred to mediation.  On August 13, 2009, plaintiff filed a motion for sanctions against defendants for failure to comply with ADR policies and procedures.  On August 27, 2009, the court granted the motion for sanctions against defendants and ordered defendants to pay the full cost of mediation.  On November 18, 2009, defendants filed a motion to compel discovery, which was denied on December 8, 2009.  On January 29, 2010, plaintiff filed a motion to augment the record to include Dr. White's "missing" letter and on May 24, 2010, the court ruled that plaintiff was permitted to make argument with respect to the letter in moving for summary judgment.

On July, 7, 2010, the parties filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. On March 2, 2011, the court granted plaintiff's motion for summary judgment in part, denied defendants' motion for summary judgment, and remanded the case for determination whether plaintiff was entitled to benefits after October 2, 2009. On March 16, 2011, plaintiff filed the Motion currently before the court.[1]

## III.    Background

Haisley argues that in order to seek attorneys' fees she must show she achieved some degree of success on the merits of her claim and that the fees requested are reasonable. Plaintiff is seeking an aggregate award of $171,250.00 for attorneys' fees, including $141,200.00 for fees submitted by Tybe A. Brett ("Attorney Brett"), with respect to 358.3 hours of work at an hourly rate of $400.00; $1,300.00 for fees submitted by Attorney Brett for 6.5 hours of travel time at an hourly rate of $200; $26,250 for fees submitted for the work of Janice M. Pintar ("Attorney Pintar"), with respect to 96.4 hours of work at an hourly rate of $300.00. (Pl.'s Mot. (ECF No. 115) at 12.) Plaintiff requests $2,500.00 in fees for 22.25 hours submitted by Stember, Feinstein, Doyle & Payne, LLC for work completed by paralegals and law clerks at an hourly rate of $125.00. (Id.) Plaintiff is seeking an award for costs in the amount of $3,381.63, interest in the amount of $6,228.29, and $4,360.00 in fees with respect to 10.9 hours of work performed by her counsel at an hourly rate of $400.00 regarding plaintiff's reply to defendants' opposition memorandum. (Pl.'s Reply (ECF No. 121) at 8.)

Haisley argues that she is a prevailing party for the purpose of receiving attorneys' fees because the court granted summary judgment in her favor. Plaintiff notes that the court denied

---

[1] Upon further review of the time records, plaintiff noted that there were four entries in the time chart which should not have been charged. (Pl.'s Reply (ECF No. 121) at 8.) Specifically, Tybe Brett's entries dated September 19, 2008 and January 27, 2009 and two entries for Janice Pintar dated July 23, 2009 should not have been charged. (Id.)

defendants' motion for summary judgment, ordered the Plan to pay LTD benefits owed to her from October 3, 2007, to October 2, 2009, and remanded the case for defendants to determine whether she is entitled to benefits after October 2, 2009. Plaintiff argues that her attorneys' fees are reasonable because considerable time was spent preparing for and litigating this case. Plaintiff contends that counsel for defendants "aggressively" defended this case and the hours worked by her attorneys were necessary in order to litigate successfully her claim. (Pl.'s Mot. (ECF No. 115) at 12.)

To meet her burden of proving that her request for attorneys' fees, costs, and interest was reasonable, plaintiff submitted affidavits from her attorneys swearing to the hours worked and the rates charged. (Pl.'s Mot. (ECF No. 115), Exs. 1, 2.) Additionally, plaintiff submitted affidavits from four attorneys practicing in the area of employment litigation swearing to the market rate attorneys in Pittsburgh, Pennsylvania charge for similar legal services. (Id., Exs. 3-6.) Plaintiff argues that unless defendants object to the requested rates and amount of time spent with sufficient specificity, the court must rely upon the record when awarding attorneys' fees.

Defendants oppose the Motion on several grounds. First, defendants argue that plaintiff is not entitled to any award of attorneys' fees. In support, defendants' argue that there is no presumption that a successful litigant in an ERISA suit should receive an award of attorneys' fees. Defendants contend plaintiff's Motion fails to meet her burden to advance beyond this threshold requirement. Second, defendants argue that, if the court decides to award attorneys' fees, the court should reduce the amount of fees recoverable and reduce the hourly rates to $250.00 for partners, $160.00 for associates, and $90.00 for paralegals and law clerks. (Def.'s Opp. (ECF No. 118) at 10.) Finally, defendants argue that the amount of hours worked by

plaintiff's attorneys is excessive, repetitive, duplicative, and clerical in nature, and the fees should be reduced on that basis alone.

The court will address each of defendants' grounds in opposition to plaintiff's Motion for attorneys' fees within the applicable framework set forth by the United States Supreme Court and the Court of Appeals for the Third Circuit.


**IV.    Standard of Review**

A district court has the discretion to award reasonable attorney's fees and costs of an ERISA action to a claimant who achieves "'some degree of success on the merits'" under 29 U.S.C. § 1132(g)(1).  Hardt v. Reliance Stand. Life Ins. Co., 130 S. Ct. 2149, 2158 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)).  Accordingly, the threshold issue is whether the ERISA fee claimant achieved some degree of success on the merits.  See Hardt, 130 S. Ct. at 2158.  After the court determines that a claimant has achieved some degree of success on the merits, "'[t]he most useful starting point for determining the amount of a reasonable [attorney's] fee' is the lodestar calculation."  United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).


**V.    Discussion**

**A.    Plaintiff Achieved Some Degree of Success on the Merits**

The United States Supreme Court has held that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)."  Hardt, 130 S. Ct. at 2158 (quoting Ruckelshaus, 463 U.S. at 694).  "A claimant does not satisfy that

requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y][.]'" Id. (quoting Ruckelshaus, 462 U.S. at 688). On the other hand, "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue,'" then the requirement is satisfied and the court may award attorney's fees. Id.

Defendants challenge Haisley's Motion for attorneys' fees on the bases that she is not entitled to any award of fees and that there is no presumption a successful plaintiff in an ERISA suit is entitled to fees, absent exceptional circumstances. Defendants, however, ignore the United States Supreme Court's recent holding that district courts have discretion to award fees to an ERISA claimant who achieves some degree of success on the merits. See Hardt, 130 S. Ct. at 2158. Although this court remanded the case for PNC and Sedgwick to determine whether Haisley was entitled to benefits after October 2, 2009, the court granted Haisley's motion for summary judgment in part, and ordered the Plan to pay her LTD benefits for the period between October 3, 2007 and October 2, 2009. The court does not need to conduct a lengthy inquiry here. It is readily evident that Haisley achieved some degree of success on the merits and is eligible for an award of attorneys' fees and costs. See Hardt, 130 S. Ct. at 2159 (plaintiff achieved "some degree of success on the merits" when she obtained a judicial order instructing her employer's long-term disability insurer to act on her application "by considering all the evidence"). Accordingly, the court has discretion to award attorneys' fees.

    **B.**    **The Ursic Factors**

In determining whether to award attorneys' fees under ERISA, a district court *may*[2]

consider five factors. See Hardt, 130 S. Ct. at 2158 n.8 (emphasis added). The factors ("Ursic

factors") to weigh include:

> (1) the offending parties' culpability or bad faith; (2) the ability of the offending
> parties to satisfy the award of attorneys' fees; (3) the deterrent effect of an award
> of attorneys' fees against the offending party; (4) the benefit conferred upon
> members of the pension plan as a whole; and (5) the relative merits of the parties'
> position.

In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 239 (3d Cir. 2009) (citing

Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)). "'[T]he Ursic factors are not

requirements in the sense that a party must demonstrate all of them in order to warrant an award

of attorney's fees, but rather they are elements a court must consider in exercising its

discretion.'" In re Unisys, 579 F.3d at 239 (quoting Fields v. Thompson Printing Co., 363 F.3d

259, 275 (3d Cir. 2004)).

Following the Supreme Court's decision in Hardt, courts continue to apply the Ursic

factors in determining whether to award attorney's fees to ERISA claimants. See Policaro v.

Eaton Corp., No. 09-1039, 2010 WL 2933957, at *1 (W.D. Pa. July 26, 2010) (citing Simonia v.

Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1121 (9th Cir. 2010)) (concurring with

the United States Court of Appeals for the Ninth Circuit in concluding that "the traditional five-

factor test . . . retains vitality under the law"). If the factors weigh in favor of a fee award, the

"'defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing

plaintiff or plaintiff class, thus encouraging private enforcement of the statutory substantive

---

[2] The Supreme Court noted that "[b]ecause these five factors bear no obvious relation to § 1132(g)(1)'s text or to our
fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this
section." Hardt, 130 S. Ct. at 2158. The Supreme Court further stated that once a claimant "becomes eligible for a
fees award under § 1132(g)(1), a court may consider the five factors . . . in deciding whether to award attorney's
fees." Id. at n.8.

rights.'" In Re Unisys, 579 F.3d at 240 (quoting Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000)).

Defendants argue that Haisley failed to meet her burden to become eligible for attorneys' fees. Defendants agree that the five-factor test set forth in Ursic guides the courts' determination whether attorneys' fees and costs are available, but contend that plaintiff can only satisfy the second Ursic factor. Defendants argue that, since only the second Ursic factor weighs in favor of a fee award, the court should decline to award attorneys' fees and costs. Plaintiff argues that all the Ursic factors weigh in favor of a fee award and, therefore, she is entitled to reasonable attorneys' fees and costs. The court will consider each Ursic factor in turn.

### (1) The Offending Parties' Culpability or Bad Faith

The first factor to consider in determining whether to award attorney's fees in an ERISA case is the offending parties' culpability or bad faith. Id. at 239. "A losing party may be culpable, however, without having acted with an ulterior motive." McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256 (3d Cir. 1994). The Court of Appeals for the Third Circuit explained that culpable conduct is "'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault . . . . Such conduct normally involves something more than simple negligence.'" McPherson, 33 F.3d at 257 (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). "A party is not culpable merely because it has taken a position that did not prevail in the litigation." Id. Under this definition, arbitrary or capricious denials of ERISA benefits may qualify as culpable conduct. See Music v. Prudential Ins. Co. of Am., No. 05-1223, 2007 WL 3085606, at *2 (M.D. Pa. Oct. 19, 2007) ("courts have found illogical, arbitrary, or capricious denials of ERISA benefits to be culpable"); Addis v. Ltd. Long-Term Disability Program, No. 05-357, 2006 WL 2387087, at *2 (E.D. Pa. Aug. 3, 2006) (finding that

the first factor weighed in favor of awarding fees and demonstrated culpability when the insurer deliberately accepted the opinions of nontreating physicians it had hired, rather than the plaintiff's treating physicians).

Defendants assert that plaintiff did not demonstrate the requisite culpability, bad faith, or lack of merit to satisfy the first Ursic factor. First, defendants argue that the administrative record demonstrates they did not engage in bad faith litigation. Second, defendants argue that the court did not conclude that defendants' denial of LTD benefits to plaintiff was arbitrary and capricious under the any gainful occupation standard of the Plan. Defendants contend that, even if the court finds defendants' decision was arbitrary and capricious, the identified procedural missteps by Sedgwick in its review of plaintiff's claim for LTD benefits did not satisfy the "bad faith" requirement. Finally, defendants argue that Haisley engaged in procedural missteps by failing to submit "mini mental status exams" to Sedgwick in support of her claim, and she cannot demonstrate that she submitted a copy of Dr. White's "missing" letter to Sedgwick. Plaintiff argues that defendants' conduct was culpable and satisfied the first Ursic factor.

This court held that Sedgwick's decision to deny Haisley's claim for benefits was arbitrary and capricious. In particular, the court found that "Sedgwick rendered inconsistent decisions during the initial stages of Haisley's LTD application process" by first approving and later denying her request for benefits. Haisley v. Sedgwick Claims Mgmt. Services, Inc., No. 08-1463, 2011 WL 818669, at *17 (W.D. Pa. Mar. 2, 2011). Additionally, the court found that Sedgwick "rejected the opinions of three treating health-care providers, [and instead] relied on four nonexamining medical consultants (even though Haisley's specific impairments were not amenable to evaluation by means of a file review)." Id. In fact, Haisley's "claim for LTD benefits was denied solely on the basis of reports submitted by nonexamining medical

consultants." Id. at *20. Defendants not only "failed to request an independent medical examination," but also "ignored Haisley's receipt of social security disability benefits after having *required* her to apply for them." Id. at *17. Therefore, the court finds that defendants' conduct demonstrates some degree of culpability. See Addis, 2006 WL 2387087, at *2. The first Ursic factor, therefore, weighs in favor of an award of attorneys' fees.

### (2) The Offending Parties' Ability to Satisfy the Award

The second factor is the offending parties' ability to satisfy the award. In re Unisys, 579 F.3d 220 at 239. The Court of Appeals for the Third Circuit has held that the second Ursic favor weighs in favor of awarding attorney's fees when the defendant's ability to satisfy the award is undisputed. Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1277 (3d Cir. 1992); see Kann v. Keystone Resources, Inc., 575 F. Supp. 1084, 1096 (W.D. Pa. 1983) (noting that the second favor weighed in favor of a fee award since the nonprevailing defendant pension plan was in a "comfortable financial position"). Defendants concede that they have the ability to satisfy the award of attorneys' fees in this case. The second factor, therefore, weighs in favor of a fee award.

### (3) The Deterrent Effect of an Award of Attorneys' Fees

The third factor is the deterrent effect of an award of attorneys' fees against the offending party. In re Unisys, 579 F.3d at 239. In McPherson, the court of appeals noted that "[i]t will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct." McPherson, 33 F.3d at 258 (citing Kann, 575 F. Supp. at 1096-97) (noting "culpability . . . has been shown," and a fee award will make the plan "less likely and not so quick to deny benefits to other participants" and thus be "a deterrent factor"); see Jagielski v. Metro. Life Ins. Co., No. 06-1081, 2007 WL 2907277, at *3 (W.D. Pa. Sept. 28, 2007) (finding

that an arbitrary, capricious, and bad faith termination of LTD benefits weighed in favor of awarding attorney's fees to deter similar future conduct).

Defendants argue that they relied in good faith upon evidence in the record and did not engage in conduct that was deliberate and reprehensible. Plaintiff argues that an award of attorneys' fees would have a deterrent effect against future violations of ERISA by defendants and other plan administrators. Although the court did not find that defendants acted in bad faith, the denial of Haisley's benefits was arbitrary and capricious. The court notes that it serves the objectives of ERISA under the circumstances of this case to award attorneys' fees in an effort to deter future arbitrary and capricious denials by defendants of LTD benefits. This factor, therefore, weighs in favor of awarding attorneys' fees.

### (4) The Benefit Conferred Upon Members of the Pension Plan as a Whole

The fourth factor to consider is the benefit conferred upon members of the pension plan as a whole. Ursic, 719 F.2d at 673; see Babish v. Sedgwick Claims Mgmt. Services, Inc., No. 07-1539, 2009 WL 2177234, at *3 (W.D. Pa. July 22, 2009), reh'g denied, 2009 WL 3234440 ("The result in this case conferred a significant benefit on plan members. In particular, . . . plan members have a right to benefits under the policy if they are unable to perform their 'own occupation' due to a mental disability."); Kuhn v. Prudential Ins. Co. of Am., No. 07-625, 2008 WL 2683100, at *2 (E.D. Pa. July 8, 2008) ("plan members generally, and particularly those who are or may be in the future afflicted with [a disability] will benefit from the court's ruling that plan requirements for showing a disease . . . do not 'defeat the legitimate expectations' of plan participants"); Jagielski, 2007 WL 2907277, at *3 (noting "an award of attorney's fees will certainly have a benefit, albeit indirectly, to the members of the pension plan who have disability claims"); but see Shah v. Broadspire Services, Inc., No. 06-3106, 2007 WL 3124707, at *2

(D.N.J. Oct. 23, 2007) (finding that the fourth factor weighed against an award of fees because plaintiff made no showing that benefits accrued to other members).

Defendants contend that an award of attorneys' fees would not confer a common benefit to all participants of the Plan. Defendants argue that an award would only benefit plaintiff. Plaintiff argues that plan members, specifically those with disabilities, will benefit as a whole if the court concludes that defendants must consider all the medical evidence provided by the claimant. While Haisley directly benefits from a fee award, the court concludes an award of attorneys' fees would only indirectly confer a benefit upon the Plan members by deterring other similar arbitrary and capricious conduct by defendants. As such, the indirect benefit was already considered under the third factor and does not merit granting additional weight under this factor. The fourth factor is neutral and does not weigh in favor of a fee award.

### (5) The Relative Merits of the Parties' Position

The last factor to balance in determining whether to award attorneys' fees is the relative merits of the parties' positions. Ursic, 719 F.2d at 673. "As with the first Ursic factor, the fact that the defendants' position ha[s] not been sustained does not alone put the fifth factor in the column favoring an award." McPherson, 33 F.3d at 258. The relative merits of the parties' positions may support an award even in the absence of bad faith litigation. See id. Defendants argue that they relied upon the administrative record when deciding Haisley's claim for LTD benefits. Plaintiff argues that because the court granted summary judgment in her favor, her position was more meritorious than the defendants' position. In considering the merits of the parties' positions, the court found that defendants' denial of Haisley's claim for LTD benefits was arbitrary and capricious. Haisley, 2011 WL 818669, at *17. The court held that plaintiff was entitled to the requested benefits and granted her motion for summary judgment in part. Id.

at *20.  Based on the relative merits of the parties' positions, the final factor weighs slightly in favor of a fee award.

Having concluded that on balance the <u>Ursic</u> factors weigh in favor of an award of attorneys' fees, the court finds that an award of attorneys' fees is appropriate in this case.  <u>See</u> <u>supra</u> Part V.B.  As a result, defendants must pay the reasonable attorneys' fees and costs of the plaintiff.

### C.      Lodestar Calculation

"A useful starting point for determining the reasonableness of the fee is the lodestar calculation."  <u>Hahnemann Univ. Hospital v. All Shore Inc.</u>, 514 F.3d 300, 310 (3d Cir. 2008) (citing <u>United Auto Workers</u>, 501 F.3d at 290).  "Under the lodestar approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate."  <u>Id.</u>  "The lodestar is presumed to be the reasonable fee . . . . However, the district court has the discretion to make certain adjustments to the lodestar."  <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  District courts "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  <u>Loughner v. Univ. of Pittsburgh</u>, 260 F.3d 173, 178 (3d Cir. 2001) (quoting <u>Pub. Int. Research Grp. of N.J., Inc. v. Windall</u>, 51 F.3d 1179, 1188 (3d Cir. 1995)).

"Attorneys seeking compensation must document the hours for which payment is sought 'with sufficient specificity.'"  <u>Washington v. Phila. Cnty. Court of Common Pleas</u>, 89 F.3d 1031, 1037 (3d Cir. 1996) (quoting <u>Keenan v. City of Phila.</u>, 983 F.2d 459, 472 (3d Cir. 1992)).  To establish sufficient specificity, "[a] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"  <u>Id.</u>

(quoting <u>Keenan</u>, 983 F.2d at 473). If the court concludes that the submissions provide sufficient information, the court may determine that the claimed fees are reasonable. See <u>id.</u> at 1038.

"The party seeking attorneys' fees has the burden to prove that its request is reasonable." <u>Potence v. Hazleton Area Sch. Dist.</u>, 357 F.3d 366, 374 (3d Cir. 2004) (citing <u>Rode</u>, 892 F.2d at 1183). To meet its burden, the fee applicant must "produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stetson</u>, 465 U.S. 886, 895 n.11 (1984). "The party opposing the fee award has the burden to challenge[,] 'by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee.'" <u>Loughner</u>, 260 F.3d at 178 (quoting <u>Rode</u>, 892 F.2d at 1183). "[T]he district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" <u>Id.</u>

### (1) Reasonableness of Hourly Rates, Costs, and Interest

Defendants object to the reasonableness of the requested hourly rates for plaintiff's counsel and to the costs. Defendants do not, however, object to the calculation of prejudgment interest on the amount of benefits awarded to plaintiff. Plaintiff and defendants requested an evidentiary hearing because the hourly rate was in dispute. The court finds, however, that an evidentiary hearing is not necessary to address the matter before the court.[3] Accordingly, the request for a hearing is denied. The court will address defendants' objections below.

---

[3] The Court of Appeals for the Third Circuit commented that "[m]any fee applications are decided on the basis of affidavits without the need for a hearing." <u>Blum v. Witco Chem. Corp.</u>, 829 F.2d 367, 377 (3d Cir. 1987). As noted by the parties, "recent Third Circuit caselaw holds than an evidentiary hearing is required when the reasonable hourly rate for fees is disputed, and that failure to hold such a hearing is reversible error." <u>Drelles v. Metropolitan Life Ins. Co.</u>, 90 F. App'x 587, 591 (3d Cir. 2004). However, the <u>Blum</u> decision held that "failure to conduct an evidentiary hearing . . . is not reversible error . . . . A hearing must be held only where the court cannot fairly decide questions of fact without it." <u>Blum</u>, 829 F.2d at 377. "It is well established that in a conflict between decisions of different panels, the oldest one controls." <u>Drelles</u>, 90 F. App'x at 591 (citing <u>Ryan v. Johnson</u>, 115 F.3d 193, 198 (3d Cir. 1997)). A district court's "failure to hold a hearing is not automatically reversible error, but rather must be

a.  <u>Reasonableness of Plaintiff's Attorneys' Hourly Rates</u>

Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community.  <u>See</u> <u>Interfaith Cmty. Org. v. Honeywell Int'l, Inc.</u>, 426 F.3d 694, 708 (3d Cir. 2005).  The Court of Appeals for the Third Circuit follows the "forum rate rule," which provides that a reasonable hourly rate "is the prevailing rate in the forum of the litigation."  <u>Id.</u> at 705.  In order "to determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  <u>Id.</u> at 708 (quoting <u>Loughner</u>, 260 F.3d at 180).  "The party seeking fees 'bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard.'"  <u>Id.</u> "[D]istrict court[s] may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record."  <u>Coleman v. Kaye</u>, 87 F.3d 1491, 1509-10 (3d Cir. 1996).

Defendants challenge plaintiffs' requested hourly rates.  First, defendants argue that plaintiff did not aver that these rates were her counsel's actual or customary rates and that clients pay those rates.  Defendants suggest that the requested rates were conjured for purposes of this Motion because similar fees were approved in <u>Sowers v. Freightcar Am., Inc.</u>, No. 07-201, 2008 WL 4949039 (W.D. Pa. Nov. 19, 2008).  <u>See</u> <u>Sowers</u>, 2008 WL 4949039, at *6.  Defendants assert that, unlike the case here, <u>Sowers</u> was a "significantly more complex" class action that

---

evaluated under <u>Blum</u>."  <u>Drelles</u>, 90 F. App'x at 591.  In <u>Blum</u>, like the case here, "several detailed affidavits describing counsel's labors were filed with the court, listing the time spent on each matter and its relation to the case."  <u>Blum</u>, 829 F.2d at 378.  In declining to hold a hearing, the court in <u>Blum</u> explained that the defendant did not "identify for the court any factual dispute or pinpoint any specific area where a hearing would have been helpful." <u>Id.</u>  "Rather, defendant's counsel simply challenged the fee request on the grounds of reasonableness of the number of hours billed."  <u>Id.</u>  Because defendants in the instant case similarly challenge the fee request on the grounds of reasonableness of the number of hours billed and the reasonableness of the hourly rates, this court declines to hold an evidentiary hearing.

began with a ninety-nine page opinion to address preliminary injunction relief concerning class pension benefits. See id. at *3. Defendants note that the court in Babish rejected plaintiff's counsel's reliance on Sowers. See Babish, 2009 WL 2177234, at *5.

Next, defendants argue that plaintiff's reliance on fee rates from Edwards Angell Palmer & Dodge, LLP ("EAPD") is untenable as the firm is located outside the "forum," i.e., Pittsburgh, Pennsylvania. Third, defendants assert that plaintiff cannot demonstrate that the requested rates were charged by any EAPD attorney in the Western District of Pennsylvania with comparable skill, experience or reputation. Lastly, defendants argue that the requested fees have not been considered reasonable by courts from the Western District of Pennsylvania. See e.g., Babish, 2009 WL 2177234, at *5 (finding $250 per hour for partners and $165 per hour for associates reasonable); DirecTV, Inc. v. Figler, No. 04-773, 2008 WL 382758, at *2 (W.D. Pa. Feb. 11, 2008) (finding $250 per hour and $200 per hour as requested by attorneys reasonable); Guy Chem. Co., Inc. v. Romaco AG, No. 06-96, 2007 WL 1276909, at *2 (W.D. Pa. May 1, 2007) (finding $240 per hour and $180 per hour for 2007 and $165 per hour for 2006 and $135 per hour reasonable); Leach v. Northwestern Mut. Ins. Co., No. 01-2364, 2006 WL 3333098, at *1 (W.D. Pa. Nov. 16, 2006), aff'd, 262 F. App'x 455 (3d Cir. 2008) (finding $250 per hour for partners and $165 per hour and $160 per hour for two different associates reasonable).

Haisley argues that the requested fees were reasonable. In support, plaintiff submitted affidavits from her counsel (Pl.'s Mot. (ECF No. 115), Exs. 1, 2), swearing to the rates charged and agreements indicating that clients pay for their services at the requested rates. Additionally, plaintiff submitted declarations from Mark D. Debofsky (id., Ex. 3), a Chicago attorney familiar with the rates charged by ERISA lawyers throughout the country, and James W. Carroll, Jr. (id., Ex. 4), Charles A. Lamberton (id., Ex. 5), and Timothy O'Brien (id., Ex. 6), who are experienced

lawyers in the Pittsburgh area, attesting that the requested hourly rates of $400.00 for Attorney

Brett and $300.00 for Attorney Pintar are reasonable given their knowledge, skill, experience,

and are within the prevailing market rates for the Western District of Pennsylvania. Plaintiff

stated that the requested rates are within the range of rates in the nationwide sampling of law

firm billing rates, and noted that the rates charged at EAPD, one of the firms that represents

defendants, are higher than the rates requested by plaintiff's counsel. Notably, plaintiff's

counsel submitted documents illustrating that counsel charges clients rates comparable to the

rates requested in this case, and the clients pay these rates (Attorney Brett's rate was $455 per

hour and Attorney Pintar's rate was $275 per hour). (Id., Exs. 1, 2.)

The court in Babish rejected the hourly rates claimed by Attorney Brett and Attorney

Pintar despite affidavits from Timothy O'Brien and James W. Carroll, Jr. attesting that the rates

requested were reasonable and within the prevailing market rates for attorneys of similar caliber

providing similar services in the Western District of Pennsylvania. Babish, 2009 WL 2177234,

at *5; (O'Brien Decl. (Civil Action No. 07-1539) (ECF No. 50), Ex. 7 ¶¶ 5, 6; Carroll Decl.

(Civil Action No. 07-1539) (ECF No. 50), Ex. 8 ¶ 7). The court in Babish found the declarations

persuasive, but not dispositive. Id. Ultimately, the court awarded the hourly rates proposed by

Sedgwick and PNC *because the plaintiff did not present* "*any evidence* that the rates charged

represent the *actual* or customary rates normally charged to clients." Id. (emphasis added).

Babish, however, is distinguishable[4] from the instant case. Here, *plaintiff's counsels submitted*

*documents* outlining *actual rates* that each has charged and that clients have agreed to pay.

---

[4] Despite defendants' reliance on Babish, it should be noted that the case was settled on appeal. See Babish, 2009 WL 3234440, at *4. (Pl.'s Reply (ECF No. 121) at 4.) Because the case was settled on appeal, the amount that was eventually paid remains unclear to the court, and, therefore, Babish is less persuasive.

Furthermore, like Jagielski, "defendant[s] filed [their] response in opposition to attorneys['] fees . . ., without affidavit[s]." Jagielski, 2007 WL 2907277, at *1. Also, defendants fail to distinguish Jagielski from the instant case. See Jagielski, 2007 WL 2907277, at *4 (awarding plaintiff's counsel an award of $350 per hour in 2007). In fact, the record is devoid of any evidence in support of defendants' proposed hourly rates. It is incumbent on the defense, where plaintiff has submitted evidence of the customary and reasonable rates, to include affidavits or some other evidence in support of their request. Because Haisley produced evidence that the rates requested represent the actual or customary rates normally charged to clients and defendants failed to produce any evidence, this court will award fees in the requested amount of $400 for Attorney Brett (whose clients agreed to pay $455 per hour in 2010), and a reduced hourly rate of $200 for travel time.[5] (ECF No. 115-1.) The rate for Attorney Pintar, however, will be reduced to $275 per hour for the purpose of calculating the lodestar because that is the rate Attorney Pintar charged for her services in 2010. (ECF No. 115-2.)

    b.    Reasonableness of Paralegal and Law Clerk Fees

Section § 1132(g)(1) permits reasonable attorneys' fees, but "makes no mention of [] paralegals" or law clerks. Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 572 (2008) (citing Missouri v. Jenkins, 491 U.S. 274, 285 (1989). Generally, attorneys' fees include work completed by paralegals and law clerks. See Jenkins, 491 U.S. at 289. Defendants argue that an hourly rate of $125 for paralegals and law clerks is not reasonable. Plaintiff contends that $125 per hour is reasonable. To bolster her argument, plaintiff included a declaration from Attorney

---

[5] District courts have awarded attorney's fees at both full and reduced hourly rates for travel time. See Rush v. Scott Specialty Gases, Inc., 934 F. Supp. 152, 156 (E.D. Pa. 1996) (awarding plaintiff's counsel's full hourly rate for travel time); Defurio v. Elizabeth Forward Sch. Dist., No. 05-1227, 2008 WL 2518139, at *12 (W.D. Pa. June 19, 2008) (reducing attorney's hourly rate by fifty percent for travel time). This court finds a fifty percent reduction in the hourly rate for travel time reasonable. Accordingly, the court will award an hourly rate of $200 for Attorney Brett's travel time.

O'Brien swearing that $125 is the prevailing market rate for paralegals and law clerks in the Western District of Pennsylvania. (See Pl.'s Mot., Ex. 6.) Plaintiff notes that the requested rates for paralegals and law clerks are comparable to those approved in Sowers. See Sowers, 2008 WL 4949039, at *6. While acknowledging Attorney O'Brien's expertise, the court notes his declaration is persuasive rather than determinative. See Babish, 2009 WL 2177234, at *5.

Caselaw from the Western District of Pennsylvania indicates that $90 is a reasonable hourly rate for paralegals and law clerks. See Gerszten v. Univ. of Pittsburgh Cancer Inst. Cancer Ctrs., No. 08-1280, 2009 WL 5103160, at *6 (W.D. Pa. Dec. 15, 2009) (finding $115 per hour reasonable for a "superb" paralegal in a gender discrimination case involving "extensive briefing and pre-trial and trial work"); Babish, 2009 WL 2177234, at *5 (finding $90 per hour for paralegals and law clerks reasonable); Leach, 2006 WL 3333098, at *1 (noting that $90 per hour for paralegal was reasonable). Plaintiff did not present any evidence that $125 is the actual or customary rate normally charged to clients by plaintiff's counsel for work completed by paralegals and law clerks in this context. Indeed, to the contrary, the rate charged in 2010 for law clerks of plaintiff's counsel was $50 per hour. (ECF No. 115-1) Accordingly, the court awards $90[6] per hour for the work completed by paralegals and law clerks for purposes of the lodestar calculation.

c.    Reasonableness of Costs

"Section 1132(g)(1) of ERISA gives a [d]istrict [c]ourt discretion to award 'costs' in addition to attorney's fees." Hahnemann Univ. Hosp., 514 F.3d at 312. Plaintiff's counsel submitted an affidavit seeking compensation for the following costs: $350.00 for the filing of the complaint; $345.95 for court transcripts; $82.19 for copying costs; $80.26 for pacer; $408.20 for travel, including air and taxi costs to Chicago, Illinois for the depositions of six Sedgwick

---

[6] Defendant did not dispute the reasonableness of $90 per hour for law clerks. (ECF No. 118 at 17.)

employees; $274.02 for the cost of the hotel in Chicago, Illinois during the depositions; $1,699.00 for deposition transcripts; $41.56 for postage and delivery; and $100.45 for scanning costs. (Pl.'s Mot. (ECF No. 115) at 14.)

Plaintiff maintains that the costs are reasonable and relies upon several district court decisions within the Third Circuit to support her position. See Gorini v. AMP, Inc., No. 99-2215, 2004 WL 1354465, at *7 (M.D. Pa. Mar. 14, 2004), aff'd, 117 F. App'x 193 (3d Cir. 2004) ("courts have held that certain expenses incurred by a prevailing party, including postage, reproductions, and phone bills, may be included in attorneys' fees awards"); In re Unisys Corp. Retiree Med. Benefits Erisa Litig., No. 03-3924, 2008 WL 2600364, at *14 (E.D. Pa. June 26, 2008), aff'd, 579 F.3d 220 (3d Cir. 2009) (permitting reimbursement of expenses, including printing and copying fees, online research charges, long-distance telephone calls, and postage); Churchill v. Star Enters., No. 97-3527, 1998 WL 254080, at *10 (E.D. Pa. Apr. 17, 1998) (costs for postage, photocopying, phone calls, and expert fees reasonable); see also Emmenegger v. Bull Moose Tube Co., 33 F. Supp. 2d 1127, 1132-36 (E.D. Mo. 1998) (awarding out-of-pocket expenses in an ERISA case).

Defendants objected to the requested costs, but did not contest any particular costs. Specifically, defendants request that the court award costs in the amount of $1,000.41, without indicating how they arrived at this figure. (Def.'s Opp. (ECF No. 118) at 17.) Plaintiff argues that defendants arbitrarily excluded costs, and requests the court to award $3,381.63 in costs. (Pl.'s Reply (ECF No. 121) at 1.) After the court's own review of the cost entries, the court agrees that the costs are reasonable and reimbursable. See In re Unisys, 579 F.3d at 240 (affirming the district court's award of $97,779.98 in litigation costs in an ERISA case); Brown v. City of Pittsburgh, No. 06-393, 2010 WL 2207935, at *15 (W.D. Pa. May 27, 2010) (finding

costs in the amount of $8,991.24 reasonable); <u>Gorini</u>, 2004 WL 1354465, at *7 (awarding

$5,909.88 in costs in an ERISA action). Accordingly, the court will award $3,381.63 in costs.

d.    <u>Reasonableness of Interest</u>

Plaintiff argues that "'interest is presumptively appropriate when ERISA benefits have

been delayed.'" <u>Sebanic v. Harleysville Life Ins. Co.</u>, 325 F. App'x 86, 91 (3d Cir. 2009)

(quoting <u>Fotta v. Trustees of the UMW Health & Retirement Fund</u>, 165 F.3d 209, 214 (3d Cir.

1998)). Plaintiff requests that the court award prejudgment interest in the amount of $6,228.29

in connection with the delay in payment of past due benefits. (Pl.'s Mot. (ECF No. 115) at 15.)

Plaintiff argues that prejudgment interest should ordinarily be granted unless exceptional

or unusual circumstances exist making the award of interest inequitable. <u>See</u> <u>Skretvedt v. E.I.</u>

<u>Dupont de Nemours</u>, 372 F.3d 193, 208 (3d Cir. 2004) (citing <u>Anthuis v. Colt Indus. Operating</u>

<u>Corp.</u>, 971 F.2d 999, 1010 (3d Cir. 1992)). Additionally, plaintiff argues that the rate of interest

awarded is within the court's discretion. <u>See id.</u> (quoting <u>Ambromovage v. United Mine</u>

<u>Workers of Am.</u>, 726 F.2d 972, 981-82 (3d Cir. 1984)) ("we reiterate that 'the awarding of

prejudgment interest under federal law is committed to the trial court's broad discretion'"); <u>see</u>

<u>also</u> <u>Sun Ship, Inc. v. Matson Navigation Co.</u>, 785 F.2d 59, 63 (3d Cir. 1986) (citations omitted)

("In federal question cases, the rate of prejudment interest is committed to the discretion of the

district court. . . . In exercising that discretion, however, the court may be guided by the rate set

out in 28 U.S.C. § 1961").

In the instant case, plaintiff requests that the court use a 6% interest rate, which is the

default rate of interest under Pennsylvania law. <u>See</u> 41 PA. CONS. STAT. § 202. Plaintiff

attached a spreadsheet calculating interest at a 6% rate, compounded monthly, through April

2011. (Pl.'s Mot. (ECF No. 115), Ex. 1.) Because defendants did not object to the award of

prejudgment interest or the rate, the court finds the amount of prejudgment interest plaintiff requested to be reasonable, and will award plaintiff $6,228.29 in prejudgment interest for the delay in paying her benefits.

### (2) Time Reasonably Expended

District courts have "'a positive and affirmative function in the fee fixing process, not merely a passive role.'" Interfaith Cmty. Org., 426 F.3d at 713 (quoting Loughner, 260 F.3d at 178). "Where an opposing party lodges a sufficiently specific objection to an aspect of a fee award, the burden is on the party requesting the fees to justify the size of its award." Id. To determine whether the burden has been met, "it is necessary that the court 'go line, by line, by line' through the billing records supporting the fee request." Id. (quoting Evans, 273 F.3d at 362). The Court of Appeals for the Third Circuit explained:

> [T]he adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable. The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request.

Id. (quoting Bell v. United Princeton Props., Inc., 884 F.2d 713, 720 (3d Cir. 1989)).

Defendants object to the evidence plaintiff submitted for the billing entries. Defendants contend that plaintiff's counsel failed to exercise "billing judgment," and argue that the court should reduce the total number of recoverable hours because plaintiff's counsel's hours are excessive, repetitive and duplicative, and clerical in nature. Defendants also note that this action is not a case that warranted constant use of two lawyers and paralegals. See Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey, 297 F.3d 253, 272 (3d Cir. 2002) ("the magnitude of the case mandated the help of numerous attorneys for both parties"); United

Food & Commercial Workers v. Super Fresh Food Markets, Inc., No. 04-1226, 2009 WL 2517064, at *2 (D.N.J. Aug. 14, 2009) (finding that time spent by four attorneys was reasonable in a "highly detailed, multi-defendant ERISA action involving substantial discovery, motions, testimony and exhibits").

Plaintiff submitted affidavits from her counsel, attesting that the hours claimed were reasonable and included "block billing" time entries to highlight the work completed. Plaintiff maintains that the time spent successfully litigating this case was reasonable and compensable. See Gertzen, 2009 WL 5103160, at *1 (noting that the number of hours billed was reasonable in light of the determination and zeal of an aggressive opponent). The court will address each of defendants' objections with respect to the billing entries.

a.        Hours Spent on the Motion for Summary Judgment

Defendants object to the 197.3 hours claimed by plaintiff with regard to the summary judgment briefing. (Def.'s Opp. (ECF No. 118) at 12.) Defendants note that the requested aggregate sum of hours suggests plaintiff's counsel spent a total of five business weeks drafting summary judgment papers for this case. Defendants attached a copy of plaintiff's counsel's fee summary to their brief in opposition, and, without any explanation or comments, placed a star next to 231 out of the 285 total time entries (81.05%). Without providing any calculations or pointing to specific time entries, defendants request that the court reduce the total hours recoverable for plaintiff's summary judgment briefing by fifty percent, or subtract 81.7 hours for Attorney Brett and 17.0 hours for Attorney Pintar. (Id. at 13.)

Defendants rely on several decisions in support of reducing excessive time by fifty percent. See Microsoft Corp. v. United Computer Resources of N.J., Inc., 216 F. Supp. 2d 383, 392-93 (D.N.J. 2002) (holding that 100.5 hours spent researching and drafting briefs for a

"routine" motion "with no novel issues" was excessive for two senior associates and that, conversely, half of this time or approximately 50 hours was reasonable); Garden State, 31 F. Supp. 2d at 387 (reducing fees in half for excessiveness); Brown, 2010 WL 2207935, at **12-14 (reducing excessive time spent on tasks by 50%); Employers Ins. Co. of Wasau v. Harleysville Ins. Co. of N.J., No. 05-4800, 2008 WL 5046838, at *2 (D.N.J. Nov. 12, 2008) (finding that 31.5 hours billed for a renewed motion for summary judgment were excessive and redundant).

Additionally, defendants argue that, because Attorney Brett is an experienced employment lawyer, the 28.3 hours of research she spent on plaintiff's motion for summary judgment was not justified. Defendants contend that Attorney Brett's recent experience in the Babish case, which involved the same case law, suggests that twenty-eight hours of research was unreasonable. In support of their position, defendants cite Ursic, 719 F.2d at 677 (concluding that a "fee applicant cannot demand a high hourly rate - which is based on his or her experience, reputation, and presumed familiarity with applicable law - then run up an inordinate amount of time researching the same law"), and Killian v. Johnson & Johnson, No. 07-4902, 2009 WL 537666, at *20 (D.N.J. Mar. 4, 2009) ("an attorney cannot charge $450 per hour based on ERISA expertise, when 30.8 hours were spent to conduct ERISA research").

In response, plaintiff argues that much of her counsel's time was spent preparing the concise statement of material facts, which required inserting citations to the record. Plaintiff posits she is entitled to recover for that time, as well as time her counsel spent citing correct and up-to-date caselaw.

The court's review of the time entries indicates that the time spent on the motion for summary judgment by the senior counsel was excessive in light of counsel's experience. The

court will, therefore, reduce the total amount of fees by fifty percent. The court will exclude 98.65 hours of compensable time for Attorney Brett for purposes of the lodestar calculation.

### b. Hours Spent Seeking to Augment the Administrative Record

Defendants contend that plaintiff cannot recover for her counsel's expenditure of more than 152 hours augmenting the administrative record. Specifically, defendants note that plaintiff's counsel billed 45.1 hours for the motion to augment the record and 107.6 hours and $2,381.22 in expenses for discovery, including the depositions of six Sedgwick employees. Defendants contend that the requested time was not recoverable because the motion was repetitive. Defendants assert that the motion for discovery and the motion to augment argued that Dr. White's "missing" letter should have been included in the administrative record. Defendants note that the court previously deferred ruling on plaintiff's motion to augment until summary judgment and that the court's ruling on the parties' cross-summary judgment motions was not based on Dr. White's "missing" letter. With no explanatory citations to specific time entries or an attempt to identify the specific expenses objected to, defendants request that the court respectively reduce Attorney Brett's and Attorney Pintar's hours by an additional 129.2 hours and 23.5 hours, and subtract $2,381.22 in expenses.

Plaintiff notes that the court permitted discovery only after defendants rejected the opportunity to reconsider the claim with an augmented record. Plaintiff maintains that the time her counsel billed included: (1) plaintiff's counsel's preparation of the motion to augment; (2) depositions of six Sedgwick employees which were held on a single day in Chicago, Illinois; (3) attendance at defendants' depositions of Steven Kessler, Dr. White, and plaintiff; (4) responding to defendants' written discovery; and (5) responding to defendants' motion to compel production of privileged communications. (Pl.'s Reply (ECF No. 121) at 6.) Notably, plaintiff argues the

motion to augment was successful because the court ruled she could make argument with respect to Dr. White's "missing" letter in her motion for summary judgment.

Plaintiff relies upon <u>Windall</u> for the proposition that she is "entitled to attorneys' fees for the work that is 'useful and of a type ordinarily necessary' in pursuing the litigation." <u>Windall</u>, 51 F.3d at 1189 (quoting <u>Pennsylvania v. Delaware Valley Citizens' Council</u>, 478 U.S. 546, 560-61 (1986)). Plaintiff notes that the court stated if Dr. White's "missing" report had been considered when determining whether plaintiff was entitled to LTD benefits, plaintiff's request for benefits may have been successful. Plaintiff argues that her counsel's pursuit of the circumstances surrounding Dr. White's missing report was useful, necessary, and reasonable and, therefore, she should be compensated for that time.

The court concludes that the 45.1 hours spent on the motion to augment was reasonable. The court notes that the discovery occurred following defendants' refusal to reconsider Haisley's claim with an augmented record, including Dr. White's letter. Accordingly, the court will not reduce the 152 hours or the $2,381.22 in expenses with regard to discovery.

c.      Hours Spent Preparing the Motion for Attorneys' Fees

Defendants assert that the 28.8 hours spent by plaintiff's counsel preparing the present motion was excessive. (Def.'s Opp. (ECF No. 118) at 14.) Defendants argue that the Motion is "substantively identical" to the motion for attorneys' fees that plaintiff's counsel drafted in <u>Babish</u>. (<u>Id.</u> at 14-15.) Additionally, defendants suggest that portions of the brief appear to have been copied from the earlier submission. Defendants argue that because the motions were "nearly identical," but plaintiff's counsel only billed nineteen hours in <u>Babish</u>, the court should reduce the total hours recoverable by fifty percent, or subtract 7.2 hours for Attorney Brett and 7.2 hours for Attorney Pintar. (<u>Id.</u> at 15.)

Plaintiff contends that she is entitled to fees for the entire time her counsel spent preparing the present Motion. Plaintiff notes that her counsel was required to update the legal principles in light of <u>Hardt</u>, review the time records, and research the calculation of interest for the delay in the payment of benefits. Plaintiff argues that she is entitled to compensation for the 10.9 hours her counsel spent preparing the reply brief, and fees in the amount of $4,360.00. Plaintiff relies on several cases to bolster her argument that time spent on motions for attorney's fees are compensable. <u>Institutionalized Juveniles v. Secretary of Pub. Welfare</u>, 758 F.2d 897, 924 (3d Cir. 1985) (time spent on a fee petition is compensable to the extent it results in a recovery of fees); <u>Prandini v. National Tea Co.</u>, 585 F.2d 47, 53 (3d Cir. 1978) ("courts have consistently held that attorneys may be awarded . . . compensation for the expenses of and time spent litigating the issue of a reasonable fee, i.e., for time spent on the fee application and successful fee appeals"); <u>Fletcher v. O'Donnell</u>, 729 F. Supp. 422, 434 (E.D. Pa. 1990) (granting 9.4 hours for work on the fee petition); <u>Bjorklund v. Phila. Hous. Auth.</u>, No. 98-2838, 2003 WL 22988885, at *5 (E.D. Pa. Nov. 20, 2003), <u>aff'd</u>, 118 F. App'x 624 (3d Cir. 2004) ("14.5 hours claimed by counsel for preparation of the fee petition[] is reasonable").

After a thorough review of the time entries with regard to the current Motion, the court finds that the time spent preparing the Motion was excessive. The court will exclude 7.2 hours for Attorney Brett and 7.2 hours for Ms. Pintar for purposes of the lodestar. The court, however, finds that the 10.9 hours billed for work spent on the reply brief was reasonable. Accordingly, the court will recognize 14.4 compensable hours for the current Motion as well as the 10.9 hours billed for the reply brief for purposes of the lodestar.

### (3) Hours Spent Conducting Unnecessary, Repetitive and Clerical Work

#### a.    Hours Spent Proofreading and Editing

Defendants argue that plaintiff's counsel cannot recover for duplicative work. Defendants contend that when one attorney reviews another's work, the time spent is duplicative and must be reduced. See Morris v. I.C. Sys. Inc., No. 06-2133, 2009 WL 1362594, at *3 (E.D. Pa. May 15, 2009) (reducing billable hours when the record was "replete with inordinately large amounts of time claimed for reviewing and revising documents created by other attorneys"). Specifically, defendants note the following time requests: (1) Attorney Pintar billed 35.8 hours for reviewing Attorney Brett's work; (2) Attorney Brett spent 72.7 hours working on plaintiff's motion for summary judgment and concise statement of facts while Attorney Pintar spent 11.7 hours reviewing and proofreading her work; (3) Attorney Brett spent 89.2 hours working on plaintiff's response to defendants motion for summary judgment and Attorney Pintar spent 12.5 hours reviewing her draft; and (4) two paralegals spent 10.0 hours editing and cite checking plaintiff's counsel's work. (Def.'s Opp. (ECF No. 118) at 15-16.) Defendants request that the court subtract 35.8 hours for Attorney Pintar and 10.0 hours for the work conducted by paralegals because plaintiff attempts to recover for duplicative work. (Id. at 16.)

Plaintiff argues that it was reasonable to staff the case with two attorneys. Plaintiff notes that defendants likewise had two attorneys representing them in the case at bar. Additionally, plaintiff notes that defendants cited a decision in their brief which found in favor of attorney's fees for time spent by more than one attorney. See Planned Parenthood, 297 F.3d at 272. Plaintiff argues that because defendants did not object to specific time entries, plaintiff cannot respond, and the court should uphold the requested fees.

The court considers the use of two lawyers to staff this case was reasonable and conducted a line by line review of the time entries and finds that the 20 of the hours Attorney Pintar spent reviewing Attorney Brett's work were repetitive and duplicative. Therefore, the

court will exclude 20 hours of Attorney Pintar's time.  After reviewing the time entries, however, the court finds that the 10 hours spent by paralegals editing and cite checking was reasonable. Accordingly, the court will recognize 10 hours for paralegal work.

b.       Hours Spent on Internal Communications

Defendants object to the hours billed by plaintiff's counsel for internal conferences amounting to 46.7 hours.  Defendants contend that these internal communications inappropriately inflated plaintiff's counsel's hours.  Consequently, defendants argue that plaintiff is not entitled to recover for these time entries.  See Maldonado v. Houston, 256 F.3d 181, 187 (3d Cir. 2001) (reducing hours billed for time spent on telephones, conference calls, and meetings to plan strategy and for "miscellaneous time"); Bluebeard's Castle, Inc. v. Hodge, No. 02-154, 2009 WL 891896, at *13 (D.V.I. April 1, 2009) (finding that conferences and communications between the party's own attorneys and legal staff were "not to be included in an assessment of reasonable fees").  In relying on Maldonado and Bluebeard's Castle, Inc., defendants request that the court subtract 33.4 from Attorney Brett and 13.3 hours from Attorney Pintar.

On the other hand, plaintiff argues that conferences between attorneys are expected to occur and she should be compensated for this time.  See United Food & Commer. Workers v. Super Fresh Food Mkts., Inc., No. 04-1226, 2009 WL 2517064, at *3 (D.N.J. Aug. 14, 2009) ("conferences are expected to occur when there are several lawyers working together on a complex case").  Plaintiff notes that she does not seek an award for time spent by the second attorney at conferences with the court.  Essentially, plaintiff argues that the time should be upheld because defendants did not object to specific time entries.

After reviewing the time entries, the court finds that the time spent on internal communications was excessive. Accordingly, the court will reduce the hours by fifty percent and recognize 16.7 hours for Attorney Brett and 6.7 hours for Attorney Pintar.

c.    Hours Spent Performing Clerical Work

Defendants argue that the fees for clerical work should be deducted from the attorneys' fee award. See e.g., Defurio, 2008 WL 2518139, at *6 (reducing attorney rate to that of a paralegal because the attorney's work was limited to reviewing transcripts, attending trial, and reading transcripts into evidence). Specifically, defendants object to the 17.4 hours Attorney Brett spent drafting letters, drafting discovery requests, scheduling the mediation, and assembling exhibits to various motions. (Def.'s Opp. (ECF No. 118) at 17.) Essentially, defendants argue that because these tasks could have been performed by Attorney Brett's legal staff, the court should deduct 17.4 hours from Attorney Brett's recoverable hours. See Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995) (reducing time that was spent on writing press releases, speaking with reporters, and publicity); Jordan v. CCH, Inc., 230 F. Supp. 2d 603, 612 (E.D. Pa. 2001) (organizing and indexing discovery materials was compensable at a paralegal hourly rate, but scheduling was purely clerical and not compensable). Plaintiff notes that she cannot respond without knowing which time entries are objectionable and, absent specific objections, the court should uphold the fees award.

After reviewing the time entries, the court finds that the time Attorney Brett spent drafting letters and discovery motions, as well as assembling exhibits requires legal expertise and is compensable. The time spent scheduling the mediation and scheduling discovery was partly clerical and, therefore, not entirely compensable. The court will exclude .5 hour for the time entry dated November 4, 2009. Because the time entry dated June 29, 2009 does not indicate

how much time was spent scheduling the mediation, the court will exclude the entire hour. Accordingly, the court will exclude 1.5 hours from Attorney Brett with regard to clerical work.

**VI.    Conclusion**

The court concludes that the fees of plaintiff's attorneys will be reduced to exclude those hours which the court concludes were not reasonably expended on the litigation because they were excessive, redundant or clerical.  The court will award plaintiff a total of $121,931.63.  The award is based upon an hourly rate of $400.00 for Attorney Brett, a reduced hourly rate of $200.00 for travel time, an hourly rate of $275.00 for Attorney Pintar, and an hourly rate of $90.00 for paralegals and law clerks.

In reaching this conclusion, the court reviewed each item in the affidavits setting forth the hours billed.  The court will exclude $49,620.00 for 124.05 hours of Attorney Brett's time multiplied by her hourly rate of $400.00.  In addition, the court will exclude $9,322.00 for 33.9 hours of Attorney Pintar's time multiplied by her hourly rate of $275.00.  The reduction calculations are reflected in the chart below:

| Staff | Lodestar | Individual Totals |
|---|---|---|
| Attorney Brett | 234.25 hours x $400.00 = $93,700.00<br><br>10.9 hours x $400.00 = $4,360.00<br><br>6.5 hours x $200.00 = $1,300.00 | $99,360.00 |
| Attorney Pintar | 62.5 hours x $275.00 = $17,187.50 | $17,187.50 |
| Paralegals/Law Clerks | 22.25 hours x $90.00 = $2,002.50 | $2,002.50 |
| **TOTAL LODESTAR** | | **$118,550.00** |
| Costs | | $3,381.63 |
| Interest | | $6,228.29 |
| **TOTAL AWARD** | | **$128,159.92** |

An appropriate order follows.

**ORDER**

**AND NOW,** this 29th day of September 2011, upon consideration of the motion for attorneys' fees, costs and interest filed by plaintiff Beverly A. Haisley (ECF No. 115) and the response thereto,

**IT IS HEREBY ORDERED** that plaintiff Beverly A. Haisley is awarded attorneys' fees, costs and interest in the amount of $128,159.92.

BY THE COURT,

 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge